```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION


   UNITED STATES OF AMERICA,    )
                                )
              Plaintiff,        )
                                )
        v.                      )   No. 13 CR 572-2
                                )
   C. GREGORY TURNER,           )
                                )
              Defendant.        )
```

<u>MEMORANDUM OPINION AND ORDER</u>

The Government and C. Gregory Turner ("Turner" or "Defendant") have filed several motions *in limine* concerning what evidence may be presented at his upcoming trial on charges that he (1) knowingly acted and conspired to act as an agent of the Republic of Zimbabwe without notifying the Attorney General and (2) willfully conspired to provide public relations, political consulting, and lobbying services to sanctioned Zimbabwean officials without obtaining a license from the Treasury Department.  *See* Dkt. No. 38 ("Indictment").

In a separate memorandum opinion and order, I denied Turner's motion to exclude a two-page "Consulting Agreement" purportedly signed by two of his co-conspirators and provisionally granted the Government cross motion.  The Consulting Agreement was the only purported co-conspirator statement to which the parties devoted attention in their

1

motions *in limine*. Therefore, I will address the Government's motion to admit additional co-conspirator statements (Dkt. No. 140) during the course of trial. *See U.S. v. Cox*, 923 F.2d 519, 526 (7th Cir. 1991) (noting, with approval, that "the [district] court can rule on each [proffered co-conspirator] statement as it is elicited [at trial] based on the evidence the Government has adduced to that point").

For the reasons set forth below, I resolve the parties' remaining motions *in limine* as follows:

1. the Government's motion to bar Turner from introducing evidence or making arguments about the impact of U.S. sanctions against Zimbabwe (Dkt. No. 136 at § I.D) is GRANTED and Turner's cross motion (Dkt. No. 154) is DENIED;

2. the Government's motion to admit an undercover recording from March 28, 2011 (Dkt. No. 155 at § II) is DENIED and Turner's cross motions (Dkt. No. 141 at § II and Dkt. No. 150) are GRANTED;

3. the Government's motion to bar Turner from making selective prosecution arguments (Dkt. No. 155 at § III.A) is GRANTED while its motion to bar him from questioning witnesses about their own alleged criminal conduct (*id.* at § III.B) is DENIED without prejudice;

4. the Government's motion to bar Turner from introducing evidence of another individual's state of mind as evidence of his own state of mind (*id.* at § IV) is DENIED without prejudice;

5. the Government's motion for a preliminary instruction on the law prohibiting U.S. persons from providing services to Specially Designated Nationals (*id.* at § V) is ENTERED AND CONTINUED while the parties work towards an agreed preliminary instruction on this issue;

2

6. the Government's motion to offer into evidence recorded phone conversations obtained through the Foreign Intelligence Surveillance Act ("FISA") (*id.* at § VI) is GRANTED, but I reserve ruling on the admissibility of the underlying calls, which the parties are working to redact; and

7. Turner's motion to introduce evidence of a meeting between Gideon Gono and congressional leaders in 2006 (Dkt. No. 153) is GRANTED subject to the conditions set forth *infra* at Section III.A.

I.

In August 2013, a special grand jury returned an indictment charging Turner with three criminal offenses.

Count I alleges that Turner conspired with his co-Defendant, Prince Asiel Ben Israel ("Ben Israel"), and others to act in the United States as agents of the Republic of Zimbabwe from November 2008 to April 2010 without notifying the Attorney General as required by 18 U.S.C. § 951(a).[1] "[T]he term 'agent of a foreign government' means an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official." *Id.* at § 951(d); *see also* 28 C.F.R. § 73.1(a).

Count II alleges that Turner committed the substantive offense of acting in the United States as an unregistered agent

---

[1] "Whoever, other than a diplomatic or consular officer or attaché, acts in the United States as an agent of a foreign government without prior notification to the Attorney General if required in subsection (b), shall be fined under this title or imprisoned not more than ten years, or both." 18 U.S.C. § 951(a).

of the Republic of Zimbabwe from November 2008 to April 2010 in violation of 18 U.S.C. § 951(a). The Government does not need to prove that Turner knew of the notification requirement in § 951 in order to secure a conviction on Counts I or II. *See U.S. v. Dumeisi*, 424 F.3d 566, 581-82 (7th Cir. 2005). The Government must only prove that Turner knew he had not notified the Attorney General before acting in the United States as a foreign agent. *Id.; see also U.S. v. Duran*, 596 F.3d 1283, 1292 (11th Cir. 2010).

Count IV alleges that Turner willfully conspired with Ben Israel and others from November 2008 to April 2010 to provide prohibited public relations, political consulting, and lobbying services "on behalf of or for the benefit of" certain Zimbabwean officials who are "Specially Designated Nationals" ("SDNs") without first obtaining a license from the Treasury Department in violation of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1707, and its implementing regulations, *see* 31 C.F.R. §§ 541.201, 541.204, 541.405.[2] The

---

[2] IEEPA provides that: "It shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter." 50 U.S.C. § 1705(a). "A person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, an unlawful act described in subsection (a) of this section shall, upon conviction, be fined not more than $1,000,000, or if a natural person, may be imprisoned for not more than 20 years, or both." *Id*. at § 1705(c).

4

SDNs to whom Turner and Ben Israel allegedly provided services are Robert Mugabe, President of Zimbabwe; Gideon Gono, the former Governor of Reserve Bank of Zimbabwe; and Simon Khaya Moyo, Zimbabwe's former ambassador to South Africa.

On April 11, 2014, Ben Israel entered a plea of guilty as to Count III of the indictment, which charged him with willfully failing to file a registration statement with the Attorney General while acting as an agent of Zimbabwen principals in violation of 22 U.S.C. § 612(a). After sentencing Ben Israel on August 21, 2014, I granted the Government's oral motion to dismiss Counts I, II, and IV of the indictment as to Ben Israel.

Turner's trial on the charges set forth in Counts I, II, and IV of the indictment is set to begin on September 29, 2014. At the pre-trial conference held on August 22, 2014, I ordered the parties to file any new motions *in limine* (or further support for their existing motions) by August 29, 2014 with all responses due one week later. This opinion summarizes the rulings I made at the pre-trial conference and resolves the parties' remaining motions *in limine*.

## II.

At the pre-trial conference, I denied the Government's first set of motions *in limine* as moot with the exception of its motion to bar Turner from making arguments or introducing evidence concerning the impact of sanctions against Zimbabwe.

*See* Dkt. No. 136 at § I.D. I address that single contested issue from the Government's first set of motions *in limine* in Section II.A below.

After the pre-trial conference, the Government moved *in limine* to (1) admit statements Ben Israel made during a March 2011 meeting with undercover agents; (2) prohibit Turner from eliciting evidence or arguing about the Government's failure to prosecute other individuals who allegedly engaged in criminal conduct; (3) prohibit Turner from presenting evidence of any other individual's state of mind as evidence of his own state of mind; (4) instruct the jury on the IEEPA regulations before opening statements; and (5) permit the Government to introduce recorded phone conversations obtained under FISA. *See* Dkt. No. 155 ("Govt.'s MILs") at §§ II-IV.

### A.

The Government has moved to bar Turner from introducing evidence or argument concerning the impact of economic sanctions against Zimbabwe (e.g., whether or how the sanctions relate to the number of Zimbabweans living in poverty). In the Government's view, this line of argument would be distracting and encourage jury nullification.

Turner counters that the impact of sanctions against Zimbabwe is central to his "defense" that he acted for humanitarian reasons. Turner contends that he "saw for himself,

first-hand, the harsh reality of the impact of the United States' sanctions against Zimbabwe. For example, [he] observed that grocery store shelves were literally empty, and that the citizens were suffering and lacked basis [sic] staples such as bread and water." Dkt. No. 154 at ¶ 6. After observing these conditions, Turner says he "attempted to bring individuals, including politicians, to Zimbabwe to see for themselves the impact that the sanctions were having upon the citizens of Zimbabwe and the country." *Id*. at ¶ 8.

Turner's alleged humanitarian motivations are legally irrelevant to the charged offenses. In order to secure a conviction, the Government must show that Turner (1) knew he had not notified the Attorney General before acting in the United States as an agent of the Republic of Zimbabwe and (2) intended to disobey and or disregard IEEPA's restrictions on providing services to Zimbabwean SDNs. The *mens rea* analysis in this case does not turn on whether Turner acted for humanitarian reasons or for a less noble (or even nefarious) purpose. Turner is guilty of the charged offenses if he used illegal means to accomplish humanitarian objectives. In other words, neither Section 951 nor IEEPA affords Turner a "humanitarian defense."

I grant the Government's motion to bar Turner from presenting evidence or arguments concerning the impact of U.S. sanctions against Zimbabwe (Dkt. No. 136 at § I.D) and deny

7

Turner's cross motion (Dkt. No. 154) because his alleged humanitarian motivations are legally irrelevant.

B.

The Government's next motion *in limine* concerns the admissibility of statements against Ben Israel's interests that Turner allegedly adopted through a one word utterance or silence.

On March 28, 2011, two undercover agents posing as wealthy businessmen from India met with Ben Israel and Turner over lunch at Ben Israel's restaurant in Hyde Park. The Government seeks to admit the following statements made during this meeting through one of the undercover agents who was present:

    ISRAEL:    I took a major political delegation from America to Zimbabwe.

    TURNER:    [Unintelligible] Mugabe.

    ISRAEL:    We were chosen to help lift the sanctions.

    UC1:    Wait...I mean you guys actually took, like politicians from here?

    ISRAEL:    Absolutely.

Tr. of Mar. 28, 2011 Mtg. at 44.[3]

The Government contends that Ben Israel's statements against interest are admissible against Turner as adoptive admissions. Turner counters that the word "Mugabe" is

---

[3] The abbreviation "UC1" refers one of the undercover agents.

insufficient to establish that he adopted Ben Israel's statements as his own.

A statement offered against a party is not hearsay if the statement "is one the party manifested that [he or she] adopted or believed to be true." *See* Fed. R. Evid. 801(d)(2)(B). "It is not necessary for one to use any specific language to adopt another's statement." *U.S. v. Ward*, 377 F.3d 671, 675 (7th Cir. 2004). The Seventh Circuit's test for adoptive admissions is whether "the statement was made in the defendant's presence, [whether] the defendant understood the statement, and [whether] the defendant ha[d] the opportunity to deny the statement but did not do so." *Id*.

Turner's interjection of the word "Mugabe" shows that he heard and understood the first part of Ben Israel's statement about taking a political delegation from the U.S. to Zimbabwe. *See Ward*, 377 F.3d at 675-76 ("A defendant may...demonstrate his cognizance of a conversation by his statements and conduct during or after the conversation."); *see also U.S. v. Andrus*, 775 F.2d 825, 839 (7th Cir. 1985) (holding that "trial court had a reasonable basis from which to conclude that [conspirator] heard and understood [co-conspirator's] statement, for both [conspirators] were sitting around a table when the statement was made")

The main point of contention between the parties is whether Turner's one word interjection constitutes an adoption of Ben Israel's statements. In one category of adoptive admission cases, the Seventh Circuit has relied on evidence that the defendant affirmatively agreed with another person's statement. *See U.S. v. Woods*, 301 F.3d 556, 561 (7th Cir. 2002) (finding adoptive admission where defendant "either led or responded to each of [FBI informant's] requests and questions about the time, place, and terms of [drug] transaction"); *U.S. v. Allen*, 10 F.3d 405, 413 (7th Cir. 1993) (finding adoptive admissions based on defendant's non-verbal cues and replies of "yeah" or "I hear ya" to FBI informant's statements); *U.S. Rollins*, 862 F.2d 1282, 1296 (7th Cir. 1988) (finding adoptive admission where defendant "frequently agree[d] with [FBI informant] and participated in the give and take of the telephone conversation"); *U.S. v. Young*, 814 F.2d 392, 396 (7th Cir. 1987) (finding adoptive admission where defendant "agreed" with fellow bank robber's statement). In contrast to these cases, Turner's utterance of the word "Mugabe" does not show that he affirmatively adopted or agreed with Ben Israel's personal boast about having led a political delegation to Zimbabwe.

The Government's fallback position is Turner's failure to deny, object to, or contradict Ben Israel's statements constitutes an adoptive admission. "When silence is relied

upon, the theory is that the person would, under the circumstances, protest the statement made in his presence, if untrue." Fed. R. Evid. 801(d)(2)(B) Advisory Committee Note to Subdivision (d). The Government must show that Turner's failure to respond to Ben Israel's statements, was "so unnatural that it supports the inference that [Turner] acquiesced to the statements." *Tober v. Graco Children's Products, Inc.*, 431 F.3d 572, 576 (7th Cir. 2005); *see also U.S. v. Price*, 516 F.3d 597, 607 (7th Cir. 2008) (noting that innocent defendant would feel compelled to deny a statement directly linking him to the charged crime).

*Ward* is the leading Seventh Circuit case on adoptive admissions based on silence. In that case, the trial court admitted evidence that Gregory Ward remained silent during a heated discussion in which his sister referred to "the money they got when they robbed the bank," which had gone missing. 377 F.3d at 675. The Seventh Circuit held that the trial court did not abuse its discretion in admitting the statement against Ward because "his sister's accusation is the type of statement that a party normally would respond to if innocent." *Id*. at 676.

Ben Israel's statements about leading a political delegation to Zimbabwe that was chosen to help lift U.S. economic sanctions is far less accusatory or incriminating

11

towards Turner than the statement directly linking Gregory Ward to a bank robbery.  As an initial matter, Ben Israel's first statement was a personal boast that did not directly implicate Turner: "I took a major political delegation from America to Zimbabwe."  Tr. at 44.  His next statement refers back to the political delegation without referencing Turner: "We were chosen to help lift the sanctions."  *Id*.  A reasonable person in Turner's position would not have felt compelled to deny statements that did not implicate him.

Second, Ben Israel's statements do not describe criminal conduct.  The criminal statutes at issue in this case require U.S. persons acting as foreign agents to notify the Attorney General and obtain a license from the Treasury Department before providing services to any SDNs.  Ben Israel did not say anything about trying to evade these restrictions.  Therefore, even if Ben Israel's statement about leading a political delegation implicitly referenced Turner, Ben Israel was not describing illegal actions that Turner would have felt compelled to deny, object to, or contradict.

I deny the Government's motion *in limine* to admit Ben Israel's statements as adoptive admissions (Dkt. No. 155 at § II) and grant Turner's cross motions to bar these statements (Dkt. No. 141 at § II and Dkt. No. 150) for the reasons stated above.  I take no position at this stage on the admissibility of

any other statements from the March 28, 2011 meeting. *See* Dkt. No. 155 at 26 n.10 (describing portions of the audio recording from this meeting that the Government "expects" to play at trial).

C.

The Government's third motion *in limine* seeks to bar Turner from (1) raising selective prosecution arguments in his examination of witnesses and statements to the jury and (2) questioning Government witnesses about alleged criminal conduct for which they have not been charged or prosecuted.

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *U.S. v. Armstrong*, 517 U.S. 456, 463 (1996). "[T]he issue of outrageous government conduct is not an issue for the jury." *U.S. v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987). Accordingly, "[d]istrict courts have routinely barred defendants from submitting evidence of prosecutorial motivation or misconduct to the jury (even when the case involves possible political overtones)." *U.S. v. Lupton*, No. 07-CR-219, 2008 WL 4603336, at *3 (E.D. Wis. Oct. 16, 2008 (collecting cases). This case is no different. Therefore, I grant the Government's motion to bar Turner from raising selective prosecution arguments at trial.

As for the Government's motion to bar Turner from questioning witnesses about alleged criminal conduct for which they have not been charged, I cannot resolve this issue as an abstract matter at the motion *in limine* stage. To the extent Turner intends to pursue this line of questioning with any adverse witnesses, he must have a good faith basis for doing so. *See U.S. v. Beck*, 625 F.3d 410, 418-19 (7th Cir. 2010); *see also U.S. v. Martin*, 618 F.3d 705, 729-30 (7th Cir. 2010). This issue can be addressed during the course of trial in a way that prevents the jury from hearing inadmissible evidence. *See* Fed. R. Evid. 103(d). At this stage, I deny, without prejudice, the Government's request to bar Turner from exposing the potential bias of adverse witnesses.

D.

The Government's fourth motion *in limine* seeks to bar Turner from questioning witnesses about their knowledge of the legal restrictions on providing services to SDNs. In support of this motion, the Government cites *U.S. v. Kaplan*, 490 F.3d 110 (2d Cir. 2007), which notes that "evidence regarding the [legal] knowledge of individuals other than the defendant should be admitted only if there is some other evidence in the record...from which to conclude that the defendant would have the same knowledge." *Id.* at 120; *see also U.S. v. Benalcazar*,

No. 09 CR 144, 2011 WL 4553027, at *12 (N.D. Ill. Sept. 29, 2011).

Turner has not presented any evidence connecting a witness's knowledge of IEEPA's restrictions (or lack thereof) to his own state of mind. However, Turner is not precluded from establishing such a connection at trial. *See Kaplan*, 490 F.3d at 121 ("Evidence of others' knowledge would have been highly relevant had it been supplemented by evidence supporting the conclusion that such knowledge was communicated to [defendant], or that [defendant] had been exposed to the same sources from which these others derived their knowledge of [insurance fraud scheme].").

Therefore, I deny the Government's fourth motion *in limine* without prejudice.

E.

The Government's fifth motion *in limine* asks me to instruct the jury on the IEEPA regulations before opening statements. The parties are currently drafting a preliminary jury instruction on the IEEPA charge and were previously directed to submit it to me on or before 9/24/2014. *See* Dkt. No. 171. In anticipation of an agreed resolution of this issue, the Government's fifth motion *in limine* is entered and continued.

F.

In its final motion *in limine*, the Government argues that it "should be permitted to offer into evidence recorded phone conversations [involving Turner] obtained through FISA." Pl.'s MILs at 39. The Government's motion has three parts: (1) an explanation of how it intends to authenticate the recorded phone calls and Turner's voice; (2) an argument to admit transcripts of the recorded calls as an aid to the jury; and (3) a request to bar Turner from questioning witnesses or making arguments regarding the validity of the underlying FISA warrant(s).

Turner has not opposed the Government's proposed method of authentication; its request to admit transcripts of any recordings admitted into evidence; or its motion to bar him from re-litigating the FISA suppression issue at trial. *See* 50 U.S.C. §§ 1806(e)-(f), 1825(f)-(g) (providing that FISA suppression motions "shall be made before the trial" and establishing *ex parte*, *in camera* review procedure). Accordingly, I grant the Government's sixth motion *in limine* as unopposed.

The parties are currently working on joint redactions to the FISA call transcripts that the Government intends to introduce at trial. *See* Dkt. No. 171. I have not seen any of these transcripts and take no position at this stage on whether they are relevant to the charged offenses.

III.

At the pre-trial conference, I denied as moot Turner's motions *in limine* to bar the Government from (1) introducing expert testimony about Zimbabwean officials' alleged use of bank accounts outside the United States to protect their assets or (2) "mentioning or challenging the legitimacy, fairness, civil liberties, or propriety of the government of the Republic of Zimbabwe." *See* Dkt. No. 141 at §§ I and III. The Government does not intend to offer such evidence at trial. I also denied Turner's motion to redact e-mails in which he used the expression "Chicago mob." *Id*. at § V.

Turner's motion to bar the Government's expert witness is moot (*see* Dkt. No. 172), so only one motion *in limine* remains: Turner's motion to admit evidence of a purported meeting between Gideon Gono and congressional leaders in the U.S. Senate Gold Room in 2006. *See* Dkt. No. 153.

Turner alleges that in 2006, former Congresswoman Diane Watson invited Gono to address congressional leaders about the impact of economic sanctions on the Zimbabwean people. Turner's motion refers to a "short video" that was "secretly" recorded during this meeting. *Id*. at 2. This video allegedly shows then-Senator Joe Biden, who had co-sponsored the ZDERA sanctions legislation in 2001, welcoming Gono and shaking his hand.

Turner was in Zimbabwe working for a non-governmental organization called the Zimbabwe Progress Fund at the time of

Gono's alleged meeting with congressional leaders. However, Turner says that "several attendees and others" notified him that the meeting had taken place, but does not claim that he saw the secret video from the meeting. *Id*. These reports supposedly "led Turner to believe that it was appropriate to meet with Gono and Mugabe without any legal issues." *Id*. at 3.

The Government concedes that Turner "is free to testify regarding his own state of mind." Dkt. No. 158 at 10. However, the Government opposes Turner's attempts to (1) present evidence that congressional leaders who met with Gono were unaware of his status as a SDN or (2) introduce the secret video recording from the meeting that Turner does not claim to have seen.

Gono's meeting with congressional leaders is relevant to whether Turner willfully conspired to violate IEEPA's restrictions on the provision of services to Zimbabwean SDNs without a Treasury Department license. "[I]n order to establish a 'willful' violation of a statute, "the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Bryan v. U.S.*, 524 U.S. 184, 191-92 (1998). The Government intends to present evidence showing that Turner knew his actions were unlawful. Turner may counter this evidence by testifying that he subjectively thought his actions were lawful based, in part, on reports he received about Gono's meetings with congressional leaders. *See Cheek v. U.S.*, 498 U.S. 192,

202 (1991) (holding that defendant's professed belief that his actions were lawful need not be "objectively reasonable" in order to counter evidence that he acted willfully).

I grant Turner's motion to admit evidence of Gono's alleged meeting with congressional leaders (Dkt. No. 153) subject to the following conditions. Turner must lay a proper foundation for any conversation(s) in which he learned about this alleged meeting. Only then may Turner testify about why reports of the alleged meeting led him to believe that his subsequent conduct was lawful. *See U.S. v. Inglese*, 282 F.3d 528, 538 (7th Cir. 2002) (out-of-court statement not hearsay when offered to show its effect on listener). Turner may not speculate about the state of mind of anyone who attended the alleged meeting or whether they subjectively believed that their actions were lawful; only Turner's state of mind is relevant to whether he committed the charged offenses. Similarly, Turner may not testify about the video from the alleged meeting absent a showing that it influenced his state of mind. The video is not admissible as a free-floating form of "corroboration" that Gono did, in fact, meet with congressional leaders in 2006.

IV.

In sum, and for the reasons set forth above, Dkt. No. 136 is granted as to § I.D. and otherwise denied as moot; Dkt. No. 140 is granted as to the Consulting Agreement for reasons stated

19

in a separate order and otherwise entered and continued pending resolution at trial; Dkt. No. 141 is granted as to §§ II, denied as to §§ IV and V, and otherwise denied as moot; Dkt. No. 150 is granted; Dkt. No. 153 is granted subject to the conditions set forth in this opinion; Dkt. No. 154 is denied; and Dkt. No. 155 is denied as to § II, granted as to § III.A, denied without prejudice as to § III.B, denied without prejudice as to § IV, entered and continued as to § V, and granted as to § VI.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: September 22, 2014