IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 CR 572-2 |
| | ) | |
| C. GREGORY TURNER, | ) | |
| | ) | |
| Defendant. | ) | |

Filed with Classified
Information Security Officer
CISO _____
Date 7/25/14

## MEMORANDUM OPINION AND ORDER

Defendant C. Gregory Turner ("Turner") has filed two
motions relating to the Foreign Intelligence Surveillance Act
("FISA"), 50 U.S.C. § 1801 et seq., (1) a motion seeking
disclosure of all FISA applications, orders, and related
documents (collectively, "FISA materials") and (2) a motion to
suppress the fruits or derivatives of any FISA surveillance or
searches targeting him (collectively, "FISA-derived evidence").
See Dkt. Nos. 75 (suppression motion) and 76 (disclosure
motion).

I deny Turner's motions for the reasons stated below. To
the extent any portions of this opinion have been redacted to
protect classified information, the Court-designated Classified
Information Security Officer, see Dkt. No. 56, is instructed to
issue an un-redacted version of this opinion to the Government
ex parte and place the same under seal.

1

A grand jury has charged Turner with committing three offenses between November 2008 and April 2010: (1) Count I alleges that Turner conspired to act in the United States as the agent of a foreign government, namely the Republic of Zimbabwe, without providing prior notification to the Attorney General as required by 18 U.S.C. § 951(a); (2) Count II alleges that Turner committed the substantive offense of acting in the United States as an unregistered agent of the Republic of Zimbabwe in violation of 18 U.S.C. § 951(a); and (3) Count IV alleges that Turner conspired to provide political consulting, public relations, and lobbying services for three Zimbabwean officials who are "Specially Designated Nationals" without first obtaining a license from the U.S. Department of the Treasury as required by 50 U.S.C. § 1705(c) and 31 C.F.R. §§ 541.201, 541.204, and 541.405. See Dkt. No. 38 ("Indictment").

On August 20, 2013, pursuant to 50 U.S.C. §§ 1806(c) and 1825(d), the Government provided notice that it intends to "offer into evidence, or otherwise use or disclose in any proceedings in this matter, information obtained or derived from electronic surveillance or physical search conducted pursuant to [FISA], as amended, 50 U.S.C. §§ 1801-1812 [electronic search provisions] and 1821-1829 [parallel physical search provisions]." Dkt. No. 37.



Turner has filed two motions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ (1) a motion "to discover or obtain applications or orders or other materials relating to electronic surveillance [or physical searches targeting him]," 50 U.S.C. §§ 1806(f), 1825(g), and (2) a motion "to suppress the evidence obtained or derived from such electronic surveillance [or physical searches] on the grounds that--[(a)] the information was unlawfully acquired; or [(b)] the surveillance [or physical search] was not made in conformity with an order of authorization or approval," *Id.* at §§ 1806(e), 1825(f)(1).

FISA establishes a judicial review procedure for resolving
Turner's motion for disclosure of FISA materials:

> [T]he United States district court..., shall,
> notwithstanding any other law, if the Attorney General
> files an affidavit under oath that disclosure or an
> adversary hearing would harm the national security of
> the United States, review *in camera* and *ex parte* the
> application, order, and such other materials relating
> to the surveillance [or physical search] as may be
> necessary to determine whether the surveillance [or
> physical search] of the aggrieved person was lawfully
> authorized and conducted.
>
> In making this determination, the court may disclose
> to the aggrieved person, under appropriate security
> procedures and protective order, portions of the
> application, order, or other materials relating to the
> surveillance only where such disclosure is necessary
> to make an accurate determination of the legality of
> the surveillance [or physical search].

*Id.* (paragraph break added); *see also id.* at § 1825(g)

(identical provision concerning physical searches).

Here, the Attorney General has submitted an unclassified
declaration that triggers this statutory *ex parte, in camera*
judicial review procedure. *See* Dkt. No. 101-1.

The Seventh Circuit recently clarified that "[t]he statute
requires the judge to review the FISA materials *ex parte in
camera* in *every* case, and on the basis of that review decide
whether any of those materials must be disclosed to defense
counsel." *U.S. v. Daoud*, No. 14-1284, --- F.3d ---, 2014 WL
2696734, at *2 (7th Cir. June 16, 2014) (emphasis in original).

"Unless and until a district judge performs his or her statutory duty of attempting to determine the legality of the surveillance [or physical search] without revealing any of the fruits of that surveillance [or search] to defense counsel, there is no basis for concluding that disclosure is necessary in order to avert an erroneous conviction." *Id.* at *4.[2].

The FISA materials  do not contain ambiguities or irregularities that might serve as grounds for disclosing such materials to the defense; that is, I found no evidence of "possible misrepresentation[s] of fact, vague identification of the persons to be surveilled or surveillance records which include a significant amount of non-foreign intelligence information, calling into question compliance with the minimization standards contained in the order." *U.S. v. Duggan*, 743 F.2d 59, 78 (2d Cir. 1984) (quoting FISA's legislative history, S. Rep. No. 95-604, at 58 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3904, 3960).

---

[2] *But see id.* at *15 (Rovner, J., concurring) (expressing doubt that "a judge will be able on his or her own to ferret out any potential misrepresentations or omissions in the FISA application, given that the judge lacks a defendant's knowledge as to the facts underlying the application and has only the government's version of the facts as a reference point").



In the end, I conclude that disclosure of the FISA materials is not necessary to make an accurate determination of whether ███████████████████████████ were lawfully authorized and executed.

## III.

I turn next to whether the ███████████████████████ were lawfully authorized.  This issue requires me to "conduct the same review that the [FISC] conducted" when the Government applied for FISA warrants ███████████████████████ *In re Grand Jury Proceedings*, 347 F.3d 197, 204-5 (7th Cir. 2003); *see also U.S. v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) (noting that judicial review of FISC orders is *de novo*). ███████

██████████████████████████████████████

Upon an application from the Government, the FISC "shall
enter an *ex parte* order as requested or as modified approving
the [requested] electronic surveillance [or physical search]" if
the judge makes certain findings.   50 U.S.C. §§ 1805(a),
1824(a).   Turner challenges ███████████████████████████   (1)
that the Government's certification of a "significant" foreign
intelligence purpose for the proposed surveillance and searches
was not clearly erroneous and (2) that the Government
established probable cause to believe that Turner was acting as
the "agent of a foreign power" as FISA defines that term.   *See*
Dkt. No. 75 at ¶¶ 4, 6.[3]

A.

████████████████████████████████████████████████████

the FISC found that the Government had properly certified that
"a significant purpose of the [proposed] surveillance [and
physical search] is to obtain foreign intelligence information."
*Id.* at §§ 1804(a)(7)(B), 1823(a)(7)(B); *see also In re Sealed
Case*, 310 F.3d 717, 735 (FISA Ct. Rev. 2002) (noting that
"significant purpose" test requires Government to have "a
measurable foreign intelligence purpose, other than just

---

[3] I construe Turner's argument that the Government may not have
"abided by or established minimization procedures required by
FISA," Dkt. No. 75 at ¶ 7, as a challenge to whether the FISA
warrants were lawfully executed.   I address this issue *infra* at
Section IV.

criminal prosecution of even foreign intelligence crimes," such as terrorism or espionage).

The Government's "significant purpose" certification is subject "to only minimal scrutiny by the courts." *Duggan*, 743 F.2d at 77. In the case of proposed surveillance or searches targeting U.S. persons, FISA expressly provides that the FISC must ensure only that the Government's "significant purpose" certification is not "clearly erroneous." 50 U.S.C. at §§ 1805(a)(5), 1824(a)(5). The FISC "is not to second-guess the executive branch official's certification that [a significant] objective of the surveillance [or physical search] is foreign intelligence information." *Duggan*, 743 F.2d at 77; *see also In re Sealed Case*, 310 F.3d at 736 (holding that Government's purpose "is to be judged by the national security official's articulation and not by a FISA court inquiry into the origins of an investigation nor an examination of the personnel involved"). "[A] reviewing court is to have no greater authority to second-guess the executive branch's certification than has the [FISC] judge." *Duggan*, 743 F.2d at 77.

FISA defines the "foreign intelligence information" whose collection must be a "significant purpose" of the Government's proposed surveillance or searches as:

> (1) information that relates to, and if concerning a United States person is necessary to, the ability of the United States to protect against--

8

        (A)   actual or potential attack or other
               grave hostile acts of a foreign power
               or an agent of a foreign power;

        (B)   sabotage or international terrorism by
               a foreign power or an agent of a
               foreign power; or

        (C)   clandestine intelligence activities by
               an intelligence service or network of a
               foreign power or by an agent of a
               foreign power; or

    (2)   information with respect to a foreign power or
          foreign territory that relates to, and if
          concerning a United States person is necessary
          to--

        (A)   the national defense or the security of
               the United States; or

        (B)   the conduct of the foreign affairs of
               the United States.

*Id.* at § 1801(e).[4]

In light of the deferential standard for reviewing the

Government's "significant purpose" certification and FISA's

broad definition of "foreign intelligence information," I have

little trouble concluding the certification at issue in this

case was not clearly erroneous.

---

[4] *See also In re Sealed Case*, 310 F.3d at 723 n.9 (characterizing
the first category of foreign intelligence information as
"protective" or "counterintelligence" information and the second
category as "affirmative" or "positive" foreign intelligence
information).



*See In re*

*Sealed Case*, 310 F.3d at 736 (holding that "FISA, as amended, does not [require] the [G]overment to demonstrate to the [FISC] that its primary purpose in conducting electronic surveillance is *not* criminal prosecution").

B.

Turner's next challenge ████████████████████████
████████████████████████████████ centers on the FISC's probable cause findings. Before issuing a surveillance order or a physical search warrant, the FISC must find:

> (3) on the basis of the facts submitted by the applicant there is probable cause to believe that—
>
> (A) the target of the electronic surveillance [or physical search] is a foreign power or an agent of a foreign

10

power: *Provided*, That no United States person may be considered a foreign power or an agent of a foreign power solely upon the basis of activities protected by the [F]irst [A]mendment to the Constitution of the United States; and

(B)    each of the facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power; [and]

[C]    the premises or property to be searched is owned, used, possessed by, or is in transit to or from an agent of a foreign power or a foreign power[.]

50 U.S.C. §§ 1805(a)(3)(A)-(B), 1824(a)(3)(A)-(B); *see also U.S. v. Ning Wen*, 477 F.3d 896 (7th Cir. 2006) (holding that FISA's probable cause standard does not violate Fourth Amendment even though Government can obtain warrant without establishing that target is probably violating domestic law).

FISA defines the key term in the statutory probable cause standard, i.e., "agent of a foreign power."

As relevant here, ▮▮▮▮▮▮▮▮▮▮▮ acts as the "agent of a foreign power" under FISA if



*see also U.S. v. Rosen*, 447 F.Supp.2d 538, ███ (E.D. Va. 2006)



These were appropriate

sources of information for the FISC to consider in making a

probable cause determination. *See* 50 U.S.C. §§ 1805(b), 1824(b)

(noting that FISC "may consider past activities of the target,

as well as facts and circumstances relating to current and

future activities of the target").



These pieces of evidence, taken together, establish

probable cause to believe that ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ After all,

probable cause requires only a "fair probability" that ████████

was acting as the agent of a foreign power within the meaning of

FISA. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also id.*

at 235 (noting that probable cause requires lesser showing than

preponderance of the evidence standard).

Turner's argument that the Government established probable

cause based solely on his protected First Amendment activities

is unavailing. ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ goes well beyond

activities manifesting a "belief in the wisdom and humanity in

lifting economic sanctions against the Republic of Zimbabwe."

Dkt. No. 75 at ¶ 3;



As for the lawfulness of the Government's proposed

for electronic surveillance and physical searches, the

In sum, the FISC lawfully authorized

There are no infirmities in either the

"significant purpose" certification or its probable cause

showing.

IV.

The next issue I must address is whether ███████████
████████████████████████████████████████ were executed in
"conformity with an order or authorization or approval." 50
U.S.C. §§ 1806(e)(2), 1825(f)(1)(B).

A.

The Government asserts that all FISA-derived evidence it
intends to use at trial was "acquired, retained, and
disseminated by the FBI in accordance with FISA's minimization
requirements, and the standard minimization procedures ("SMPs")
adopted by the Attorney General and approved by the FISC." Dkt.
No. 101 at 33.[5]

[black redaction box]

[black redaction box]

---

[5] The SMPs are a set of rules governing the acquisition,
retention, and dissemination of non-publicly available
information concerning "unconsenting" U.S. persons. 50 U.S.C. §
1801(h)(1)-(3) (directing Attorney General to adopt minimization
procedures that meet certain requirements).

16



in this case is sufficient evidence from which to conclude that

the Government executed the FISA                          "in

conformity with an order or authorization or approval." 50

U.S.C. §§ 1806(e)(2), 1825(f)(1)(B).

With regard to whether the FBI followed the SMPs in this case, I acknowledge that the Government asks me to accept the Special Agent's classified declaration at face value. I do so, with some reluctance, because Congress did not intend for reviewing courts to "second-guess" the certifications of executive branch officials when reviewing whether FISA warrants were lawfully issued and executed. *See In re Grand Jury Proceedings*, 347 F.3d at 205 (citing *U.S. v. Duggan*, 743 F.2d 59, 77 (2d Cir. 1984)); *see also U.S. v. Hammoud*, 381 F.3d 316, 334 (4th Cir. 2004) (holding that FISA requires only a "good faith effort to minimize the acquisition and retention of irrelevant information" and "the mere fact that innocent conversations were recorded, without more, does not establish that the government failed to appropriately minimize surveillance"), *judgment vacated on other grounds in Hammoud v. U.S.*, 543 U.S. 1097 (2005) (remanding for further consideration in light of *U.S. v. Booker*, 543 U.S. 220 (2005)).

In sum, based on my careful *ex parte*, *in camera* review of the classified materials

████████ I conclude that the ████ acted in conformity with the authorizations and limitations set forth in the underlying ████████

V.

Having determined that the FISA ████████████████████████████████ were lawfully authorized and conducted, I must deny his motions "except to the extent that due process requires discovery or disclosure." *Id.* at §§ 1806(g), 1825(h). The scope of FISA's due process disclosure standard is unsettled. *See U.S. v. Amawi*, 695 F.3d 457, 475 (6th Cir. 2012) (noting competing arguments that FISA's due process disclosure provision covers just *Brady* material or broader category of "relevant and helpful" information). I need not take sides in this debate because the FISA materials that Turner seeks to discover--i.e., the Government's applications, the FISC's orders, and related documents--do not contain information that is exculpatory or even helpful to his defense.

VI.

Turner's respective motions for disclosure of FISA materials and suppression of FISA-derived evidence are denied for the reasons stated above. To the extent any portions of this opinion have been redacted to protect classified information, the Classified Information Security Officer is

directed to issue an un-redacted version of this opinion to the Government *ex parte* and place the same under seal.

**ENTER ORDER:**

Elaine E. Buckle

**Elaine E. Bucklo**
United States District Judge

Dated: July 25, 2014