UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 13 CR 572 |
| | ) | |
| | ) | Hon. Elaine E. Bucklo |
| | ) | |
| v. | ) | Violations: Title 18, United States |
| | ) | Code, Sections 371 and 951(a); |
| C. GREGORY TURNER | ) | and Title 50, United States Code, |
| also known as "Greg Turner" | ) | Section 1705(c) |

## COUNT ONE

The SPECIAL AUGUST 2012 GRAND JURY charges:

1. At times material to this indictment:

    a. Prince Asiel Ben Israel and defendant C. GREGORY TURNER, also known as "Greg Turner," held themselves out to be lobbyists, consultants, and businessmen with connections to high-ranking public officials in the United States and Africa.

    b. The Republic of Zimbabwe was a country located in southeast Africa. ZANU-PF was the ruling political party in Zimbabwe. Through statutes, regulations, and executive orders (the "Sanctions"), the United States imposed restrictions on travel and economic trade to and from Zimbabwe, and it also barred transactions with certain Zimbabwean individuals and entities (the "Specially Designated Nationals"). Among the Specially Designated Nationals were:

        i. Robert Mugabe, who was the President of Zimbabwe and a member of ZANU-PF;

    ii. Gideon Gono, who was the Governor of the Reserve Bank of Zimbabwe and a member of ZANU-PF;

    iii. Simon Khaya Moyo, who was Zimbabwe's Ambassador to South Africa and a member of ZANU-PF;

    iv. Samuel Simbarashe Simbanenduko Mumbengegwi, who was Zimbabwe's Foreign Minister and a member of ZANU-PF; and

  c. Zimbabwe Official A and Zimbabwe Official B were Zimbabwe public officials and members of ZANU-PF.

  d. Absent a lawful exception, individuals who agreed to operate within the United States subject to the direction and control of a foreign government, including by engaging in political activities, acting as public relations advisors, and acting as political consultants for or in the interest of a foreign government, were required to provide prior notification to the Attorney General as required under the rules and regulations established by the Attorney General.

2. Beginning no later than in or around November 2008, and continuing at least until in or around April 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere:

C. GREGORY TURNER, also known as "Greg Turner,"

knowingly conspired with Prince Asiel Ben Israel and others known and unknown to the grand jury to commit offenses against the United States, namely, to act in the United States as agents of a foreign government, specifically the Republic of Zimbabwe, without prior notification to the Attorney General as required by law, in violation of Title 18, United States Code, Section 951(a).

## The Conspiracy

### Turner and Ben Israel Agree to Provide Public Relations, Political Consulting, and Lobbying Services to Mugabe, Gono, and Other Specially Designated Nationals

3. It was part of the conspiracy that Ben Israel and defendant TURNER met with Mugabe, Gono, and other Specially Designated Nationals in Zimbabwe, and agreed to act on behalf of the Government of Zimbabwe by engaging in public relations, political consulting, and lobbying efforts to have the Sanctions removed in exchange for a promise of approximately $3.4 million. Among other things, Ben Israel and TURNER agreed to: (a) convince and attempt to convince United States federal and state public officials to oppose the sanctions; (b) arrange for meetings between United States federal and state public officials and high ranking members of the Zimbabwe government in Africa and in the United States to discuss the removal of sanctions; and (c) attempt to assist Zimbabwe officials in obtaining visas to travel to the United States to discuss the removal of sanctions against Zimbabwe.

4. It was further part of the conspiracy that Ben Israel and defendant TURNER did not register as agents of a foreign government.

5. It was further part of the conspiracy that, in or around November 2008, Ben Israel and defendant TURNER, and Illinois State Senator A met with Mugabe and Moyo in South Africa. As part of this meeting, among other things, Ben Israel and TURNER agreed to lobby United States public officials for the removal of the Sanctions and to lobby the State of Illinois to help set up a stock exchange in Zimbabwe.

6.	It was further part of the conspiracy that, in or around late November 2008, Ben Israel entered into a "Consulting Agreement" with Zimbabwe Official B pursuant to which Ben Isreal was to work as an "Independent contractor" for an entity not named in the Agreement, and render services for a period of twelve months, commencing on the Agreement's execution date of November 26, 2008. In exchange for these services, Ben Israel was to be paid approximately $3,405,000 in four installments: (a) $90,000 at the signing of the contract; (b) $1,105,000 upon completion of the "Zimbabwe meeting (date to be determined)"; (c) $1,105,000 "upon completion of the South Africa meeting"; and (d) $1,105,000 "upon completion of" the project.

7.	It was further part of the conspiracy that, on or about December 5, 2008, Ben Israel and defendant TURNER attempted to receive a $89,970 wire transfer sent from Zimbabwe Official B in Africa, to Ben Israel's bank account in the United States, which wire transfer was blocked by Ben Israel's bank.

8.	It was further part of the conspiracy that, on or about December 16, 2008, Ben Israel, pursuant to Zimbabwe Official A's authorization, withdrew $90,000 from Zimbabwe Official B's bank account in Botswana.

9.	It was further part of the conspiracy that, in or around December 2008, Ben Israel and defendant TURNER arranged for Illinois State Senator A and Illinois State Representative A to meet with Mugabe and Gono in Zimbabwe regarding, among other things, the Sanctions.

10. It was further part of the conspiracy that, in or around January 2009, Ben Israel and defendant TURNER arranged for United States Representative A to attend an "off the record" meeting with Gono in South Africa regarding the Sanctions.

11. It was further part of the conspiracy that, in or around January 2009, Ben Israel and defendant TURNER arranged for Illinois State Representative A to meet with Gono in Zimbabwe to provide a report on the progress made and recommend a strategy for their continued efforts to have the Sanctions lifted.

12. It was further part of the conspiracy that, in or around September 2009, Ben Israel attended and scheduled meetings regarding the removal of the Sanctions between United States federal and state officials, and Mugabe and other Zimbabwean officials while they were in New York for the United Nations General Assembly.

13. It was further part of the conspiracy that Ben Israel and defendant TURNER asked United States Representative B to invite Gono, Zimbabwe Official A, and Zimbabwe Official B to attend a forum on African issues that United States Representative B was hosting in Washington, D.C., in or around September 2009, and to speak about the United States' economic policy related to Zimbabwe.

14. It was further part of the conspiracy that Ben Israel agreed to assist Gono, Zimbabwe Official A, and Zimbabwe Official B in obtaining visas to travel to Washington, D.C. to attend the forum hosted by United States Representative B in or around September 2009.

15. It was further part of the conspiracy that, in or around October 2009, Ben Israel and defendant TURNER traveled to Zimbabwe and asked for Mumbengegwi to arrange for their airport pick-up and hotel accommodations.

16. It was further part of the conspiracy that Ben Israel asked United States Representative A to host economic development meetings in Illinois between a Zimbabwe Deputy Prime Minister and officials of the State of Illinois and City of Chicago in or around November 2009.

17. It was further part of the conspiracy that, in or around November 2009, defendant TURNER forwarded a letter on the letterhead of Illinois State Senator A, addressed to Gono stating that Ben Israel and Zimbabwe's Ambassador to the United States had been invited to a caucus of state legislators to discuss the effects of the Sanctions.

18. It was further part of the conspiracy that, in or around December 2009, defendant Ben Israel spoke at a caucus of state legislators and advocated for the removal of the Sanctions.

19. It was further part of the conspiracy that Ben Israel and defendant TURNER arranged for several United States public officials, including Illinois State Senator A, to travel to Zimbabwe in or around December 2009. The trip never occurred.

20. It was further part of the conspiracy that Ben Israel and defendant TURNER traveled to Zimbabwe to seek payment from Mugabe, Gono, Mumbengegwi, and the Republic of Zimbabwe.

21. It was further part of the conspiracy that Ben Israel and defendant TURNER helped Zimbabwean officials, including Mugabe and Gono, correspond with United States federal and state public officials. For example:

    a. In or around December 2008, defendant TURNER and Ben Israel caused Gono to write a letter to United States Representative A asking to meet with United States Representative A about the Sanctions in an "off the record discussion" in South Africa in January 2009.

    b. In or around January 2009, Ben Israel and defendant TURNER forwarded, and caused to be forwarded, a letter addressed from Illinois State Senator A to Mugabe, which letter informed Mugabe that Illinois State Senator A was prepared to lead a group of elected officials to Zimbabwe and conduct an on-site investigation so those officials could ask the White House to meet with Mugabe.

    c. In or around June 2009, defendant TURNER caused Gono to send a letter to United States Senator A regarding the removal of the Sanctions.

    d. In or around July 2009, Ben Israel forwarded, and caused to be forwarded, to defendant TURNER, a letter addressed from Illinois State Representative A to Gono updating Gono on efforts by Illinois State Representative A and Ben Israel to have the Sanctions lifted, including their upcoming travel to Ghana to meet with the President of the United States and his staff on the issue.

    e. In or around September 2009, Ben Israel and defendant TURNER forwarded, and caused to be forwarded a letter, dated July 6, 2009, to Zimbabwe Official A addressed from Illinois State Senator A to Mugabe about

8

organizing a group of state legislators to travel to Zimbabwe to observe the effects of the Sanctions.

  f.  In or around October 2009, defendant TURNER forwarded a letter to Zimbabwe Official A, addressed from United States Representative A to Mugabe thanking Mugabe for meeting with United States Representative A in New York, requesting an invitation for United States Representative A to travel to Zimbabwe in December 2009, and expressing United States Representative A's commitment to working toward the removal of the Sanctions.

  g.  In or around November 2009, defendant TURNER forwarded to Mugabe's secretary a letter addressed from Illinois State Senator A to Mugabe discussing traveling to Zimbabwe with Ben Israel to meet with Mugabe to update him on efforts to end the Sanctions in December 2009.

  h.  In or around November 2009, Ben Israel and Turner forwarded, and caused to be forwarded, to Mugabe's secretary a letter addressed from Illinois State Senator A to Gono that stated that Ben Israel and Zimbabwe's Ambassador to the United States had been invited to a caucus of state legislators to discuss the effects of the Sanctions and that requested a meeting with Gono while Illinois State Senator A was in Zimbabwe in December 2009.

  22.  It was further part of the conspiracy that Ben Israel and defendant TURNER reported their progress on their efforts to have the Sanctions removed to Zimbabwean government officials, including Mugabe, Gono, Moyo, Mumbengegwi, and Zimbabwe Official A.

23. It was further part of the conspiracy that Ben Israel and defendant TURNER cleared with Zimbabwean officials the itinerary and agendas for the meetings with United States federal and state public officials.

### Offer to Arrange for Zimbabwe Minister of Tourism to Meet with State of Illinois and City of Chicago Officials

24. It was further part of the conspiracy that, in or around 2010, Ben Israel and defendant TURNER offered to arrange for Zimbabwe's Minister of Tourism to travel to the United States and meet with State of Illinois and City of Chicago officials regarding tourism, banking, and commerce in exchange for $125,000.

25. It was further part of the conspiracy that, in or around April 2010, Ben Israel and defendant TURNER offered to assist Zimbabwe's Minister or Tourism and others traveling with him in obtaining visas for them to travel to the United States to attend meetings in the State of Illinois and the City of Chicago.

26. It was further part of the scheme that defendants BEN ISRAEL and TURNER concealed, misrepresented, and hid and caused to be concealed, misrepresented, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

### Overt Acts

27. In furtherance of and to effect the objects of the conspiracy, Ben Israel and defendant TURNER committed the following acts, among others, in the Northern District of Illinois, Eastern Division, and elsewhere:

10

a. In or around November 2008, Ben Israel and defendant TURNER met with Mugabe, Moyo, and Illinois State Senator A in South Africa.

b. In or around late November 2008, Ben Israel entered into a "Consulting Agreement" with Zimbabwe Official B.

c. On or about December 5, 2008, Ben Israel and defendant TURNER attempted to obtain a $89,970 wire transfer from Zimbabwe Official B.

d. On or about December 16, 2008, Ben Israel withdrew $90,000 from Zimbabwe Official B's bank account in Botswana.

e. In or around December 2008, Ben Israel and defendant TURNER caused Gono to write a letter to United States Representative A asking to meet with United States Representative A about the Sanctions in an "off the record discussion" in South Africa in January 2009.

f. In or around early December 2008, Ben Israel and defendant TURNER traveled to Zimbabwe to meet with Illinois State Senator A, Illinois State Representative A, and Zimbabwe officials.

g. From on or about January 9, 2009, to on or about January 11, 2009, Ben Israel and defendant TURNER traveled to Johannesburg, South Africa to meet with United States Representative A and Gono.

h. In or around January 2009, Ben Israel and defendant TURNER forwarded, and caused to be forwarded, a letter addressed from Illinois State Senator A to Mugabe, which letter informed Mugabe that Illinois State Senator A

11

was prepared to lead a group of elected officials to Zimbabwe and conduct an on-site investigation so those officials could ask the White House to meet with Mugabe.

      i.     In or around late January 2009, Ben Israel and defendant TURNER traveled to Zimbabwe to meet with Illinois State Representative A and Zimbabwe officials.

      j.     In or around July 2009, Ben Israel forwarded, and caused to be forwarded, to defendant TURNER, a letter from Illinois State Representative A to Gono updating Gono on efforts by Illinois State Representative A and Ben Israel to have the Sanctions lifted, including their upcoming travel to Ghana to meet with the President of the United States and his staff on the issue.

      k.     In or around September 2009, Ben Israel and defendant TURNER forwarded, and caused to be forwarded a letter, dated July 6, 2009, to Zimbabwe Official A addressed from Illinois State Senator A to Mugabe about organizing a group of state legislators to travel to Zimbabwe to observe the effects of the Sanctions.

      l.     In or around September 2009, Ben Israel met with Mugabe in New York City.

      m.     In or around October 2009, defendant TURNER traveled to Zimbabwe to meet with and attempt to receive payment from Gono.

      n.     In or around November 2009, Ben Israel and defendant TURNER forwarded, and caused to be forwarded, to Mugabe's secretary a letter addressed from Illinois State Senator A to Gono that stated that Ben Israel and

Zimbabwe's Ambassador to the United States had been invited to a caucus of state legislators to discuss the effects of the Sanctions and that requested a meeting with Gono while Illinois State Senator A was in Zimbabwe in December 2009.

  o. In or around December 2009, Ben Israel spoke to a caucus of state legislators regarding the Sanctions.

  p. In or around December 2009, defendant TURNER traveled to Zimbabwe to meet with Gono and seek money to allow United States public officials to travel to Zimbabwe.

 All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

The SPECIAL AUGUST 2012 GRAND JURY further charges:

1. Paragraphs 1(a), (b), (c), and (d) of Count One are realleged here.

2. Beginning no later than in or around November 2008, and continuing at least until in or around April 2010, in the Northern District of Illinois, Eastern Division, and elsewhere,

C. GREGORY TURNER, also known as "Greg Turner,"

defendant herein, acted in the United States as agents of a foreign government, namely, the Republic of Zimbabwe, without prior notification to the Attorney General as required under the rules and regulations established by the Attorney General;

In violation of Title 18, United States Code, Sections 951(a) and 2.

## COUNT THREE

The SPECIAL AUGUST 2012 GRAND JURY further charges:

1. Paragraphs 1(a), (b) and (c) of Count One are realleged here.

2. At times material to this Count, individuals who provided services on behalf of and for the benefit of Specially Designated Nationals, including by engaging in political activities, acting as public relations advisors, and acting as political consultants, were required to obtain a license from the United States Department of Treasury.

3. Beginning no later than in or around November 2008, and continuing at least until in or around April 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

C. GREGORY TURNER, also known as "Greg Turner,"

defendant herein, willfully conspired to provide services on behalf of and for the benefit of Specially Designated Nationals Robert Mugabe, Gideon Gono, and Simon Khaya Moyo, namely, political consulting, public relations, and lobbying services, without first having obtained a license from the United States Department of Treasury.

### The Conspiracy

3. Paragraphs 3 through 26 of Count One are realleged here.

## **Overt Acts**

4. Paragraph 27 of Count One is realleged here.

All in violation of Title 50, United States Code, Section 1705(c), and Title 31, Code of Federal Regulations, Sections 541.201, 541.204, and 541.405.

# **FORFEITURE ALLEGATION**

1. The allegations contained in Counts One and Three are incorporated here for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of the offenses alleged in Counts One and Three,

>C. GREGORY TURNER, also known as "Greg Turner,"

defendant herein, shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to said violations. The property to be forfeited includes, but is not limited to, the following: $90,000.

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY