

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | No. 13 CR 572 |
| | )<br>) | Judge Bucklo |
| C. GREGORY TURNER<br>Defendant. | )<br>) | |

**FILED**

JAN 2 0 2015

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### DEFENDANT'S SENTENCING STATEMENT

Defendant, C. Gregory Turner ("Turner"), appearing in his own person, states the following to the court at sentencing on January 20, 2015:

Good morning to the Court and to everyone who is present today. I am grateful for the opportunity to express my thoughts in response to the charges against me. As the court well knows and as the record will show, I voluntarily returned to the United States at my own expense upon learning of this indictment. I returned primarily because I truly could not imagine that my 30 years of humanitarian efforts and networking with African and African American communities could be a crime.

As I approach my 73rd birthday (February 20th) and my 50th wedding anniversary this year, I am reminded that I had planned for this year to be the close of a great career serving my people and contributing to the positive education of my 14 grandchildren. I want the court to know that I was blessed to be able to spend the first 40 years of my life in pursuit of the American dream. I honorably served in the U.S. Military for 3 years, and received top secret security clearance and training as a cryptographer. After being discharged in 1963 and obtaining my degree (1972), I held several jobs and prominent positions in addition to actively participating in the Civil Rights Movement.

As the Court may, or may not, be aware, most African Americans who are over 50 years of age have been told to go back to Africa if they were dissatisfied with the slow pace of their growth and progress in America. I, in fact, accepted that challenge literally in 1977 as a member of the African Hebrew Israelite community, and moved to Africa. I can honestly say that after serving African people in over six countries, by providing clean water, housing, and educational institutions, I am proud of what I have done with the past 40 years of my life. It is difficult for me to conceive that my peaceful, non-violent attempts to connect 45 million disenfranchised African Americans with their brothers and sisters on the African continent, the land of our forefathers, could be a crime. I wholeheartedly support the rights of fellow members of the Jewish community in America to support their cause in the State of Israel. I support Irish Americans' sympathy for the plight of their people in northern Ireland. And, therefore, I demand respect for my right to participate openly and nonviolently in the development of my birthright, the African continent.

For years, I have carried a copy of the U.S. Constitution on my person at all times and I read it frequently. A former school classmate, who went on to become a judge, gave this document to me. The words in the Constitution inspired me to be a good citizen of Illinois, the United States, and the world.

I believe that the First Amendment to the U.S. Constitution gave me the right to peaceably assemble with my federal and state elected officials and to petition the government for a redress of grievances. After over 30 years of involvement in African and African American liberation movements and development of linkages between African Americans and people on the African continent, including the people of Zimbabwe, I believed that I had the right to petition the government in regards to the impact of the sanctions on the people of Zimbabwe and on their brothers and sisters of African descent in America.

The prosecutors accused me of being a lobbyist and seeking to be paid for lobbying activities without registering. As I am sure the Court knows, in the United States, lobbying is a right that is protected by both the U.S. and the Illinois Constitutions. Furthermore, one is only required to register as a lobbyist if one meets three tests: (1) Made more than $5,000 in a six-month period or made expenditures of $20,000 or more per six-month period in support of lobbying activities. (2) Made more than one lobbying contact. (3) Spent more than 20% of his time lobbying for a single client over a six-month period of time. Unless each of these criteria is met, there is no registration requirement for that individual.

In my case, I did not make even a penny as a result of my activities on behalf of the Zimbabwe people. I did not spend more than a few hundred dollars on those activities. And I did not spend more than 20% of my time in those activities. In that I did not meet the criteria to be required to register as a lobbyist, I did not reasonably believe that I had an obligation to register. However, if I was mistaken, I am very sorry for my mistake. It was never my intention to circumvent the Constitution or the laws of the U.S.

I have read the Illinois Constitution which states in Article I Sec. 5. Right To Assemble and Petition. The people have the right to assemble in a peaceable manner, to consult for the common good, to make known their opinions to their representatives and to apply for redress of grievances.

My interactions were only with federal and state elected officials and I believed my actions were protected by federal and state constitutions. No federal or state official ever advised me that I was violating the law, and I did not believe any elected officials would participate in activities that they believed were unlawful. During the entire 2-year period of my efforts on behalf of the people of Zimbabwe, no official from the United States Embassy in Harare, Zimbabwe or the State Department in Washington DC ever warned me that anything I

was doing violated sanctions. I reasonably believe that the U.S. Ambassador to Zimbabwe was aware of my activities. As a matter of protocol, in fact, he met with the federal and state government officials when they traveled to Zimbabwe on fact-finding trips. Clearly, I did not knowingly or willfully refuse or fail to register with the Attorney General. I had never been given any reason to believe that I needed to register.

My interactions with President Robert Mugabe, S.K. Moyo, Gideon Gono, and any and all others, were made with them in their official capacities as duly elected officials of the government of the Zimbabwe people, and not in their individual or personal capacities. I met with them as government leaders who could facilitate my humanitarian efforts and not as individuals who might be interested in personal wealth.

It should be obvious to all that President Mugabe was wealthy before the sanctions, continues to be wealthy during the sanctions, and will likely be wealthy whether or not the sanctions are ever lifted. The common people in Zimbabwe are the ones suffering from the sanctions. Lifting the sanctions would probably do little to benefit Mr. Mugabe and other government leaders but could do much to benefit poor people in Zimbabwe and also the poor people in the United States if micro-business trade relations could be established among the global poor.

The prosecutors alleged in their Government's Sentencing Memorandum that I was attempting to conceal my relationships and "avoid any risk that the United States government would learn of the transaction." I never attempted to hide my efforts in Zimbabwe from the United States government. All of my activities were with U.S. government officials, including over 20 state and federal elected officials, the former chairman of the Congressional Foreign Affairs Committee on Africa, and the United States Ambassador to Zimbabwe. Furthermore, my activities were published in various African news media.

It was never my intention to break any law. I am close to 73 years old and my only felony conviction was over 30 years ago. However, if I made serious mistakes in my judgment about how to best help the people in Zimbabwe who are suffering, I am very sorry. I offer my sincere apologies to the Court and to the People of the United States.

I believe I may be entitled to an acquittal because I was convicted of lobbying, which is a constitutional right and not a criminal offense, because the charge for which I was convicted appears to me to fail to state an offense, which, if true, would deprive the court of jurisdiction and I understand that jurisdiction cannot be waived by any party and not even by the Court, because the elements of the alleged crime do not appear to me to be stated with specificity in the charging document, and because I never had the intent to commit a crime and I did not knowingly or willfully refuse or fail to register with the Attorney General.

If there is any just reason to deny me an acquittal, then I believe society would benefit the most if I were sentenced to community service, instead of prison, so that I could work with various ministers on behalf of our youth in Chicago. I pray that my efforts to preserve my inalienable rights have not offended anyone and I want you to know that I do not carry any malice or grudge against the Court or the prosecutor. In closing, I am truly sorry if my well-intended actions violated any aspect of United States law. That was never my intention.

Thank you,

*[signature]*

C. Gregory Turner, Defendant

7518 S. Phillips
Chicago, IL 60649
708-926-6965